WO

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

Robert Raymond Navarro,

    Petitioner,

v.

Charles L. Ryan,

    Respondent.

No. CV-12-01899-PHX-GMS

**ORDER**

Pending before the Court is Petitioner Robert Raymond Navarro's Amended Petition for a Writ of Habeas Corpus (Doc. 7) and the Report and Recommendation (R&R) of Magistrate Judge James F. Metcalf (Doc. 120). Navarro timely filed objections to the R&R (Doc. 123). *See* 28 U.S.C. § 636(b)(1). For the following reasons the R&R is adopted (with modifications as outlined below) and Navarro's Petition is dismissed.

## BACKGROUND

Robert Raymond Navarro was convicted in Arizona state court of aggravated assault, a class 3 dangerous felony. The conviction stemmed from a confrontation between Navarro and a bouncer in a bar during which Navarro threatened the bouncer with a knife. At the sentencing phase of the trial, the court conducted a hearing on Navarro's prior criminal convictions and found that two of them qualified as serious felony convictions— so he was sentenced to life with the possibility of parole after 25 years under Arizona's three-strikes law. Navarro appealed his conviction, arguing that the trial court erred by not instructing the jurors on the lesser included offense of disorderly conduct. The Arizona Court of Appeals affirmed, holding that any error was invited because Navarro had

requested that the instruction be withdrawn.

Navarro then filed his first petition for post-conviction relief ("PCR"). The court concluded that his claims were meritless and dismissed his petition. Navarro then filed a second PCR petition. This time he included a claim of actual innocence supported by allegations concerning misidentification, mistaking jewelry for a knife, and potential impeachment of the victim based on his criminal history. The PCR court rejected Navarro's arguments.

Navarro filed this federal habeas action shortly before his second state PCR petition. Navarro subsequently amended his petition to assert a single ineffective assistance of counsel ("IAC") claim based on four grounds. First, Navarro alleges that his trial counsel failed to investigate and present evidence that the knife was nothing more than Navarro's jewelry. Second, he alleges that trial counsel failed to emphasize possible misidentification. Third, trial counsel allegedly failed to impeach the victim's credibility with his criminal history and an associated motive to give false testimony. Finally, Navarro alleges that trial counsel failed to overrule Navarro's own instructions and insist that the court submit to the jury an instruction on the lesser included offense of disorderly conduct.

The Magistrate Judge's first R&R recommended that Navarro's petition be denied. (Doc. 72). The Magistrate Judge found that Navarro's claims were procedurally defaulted. He further determined that although Navarro may be able to demonstrate cause to excuse the procedural default under *Martinez v. Ryan*, 566 U.S. 1 (2012), any evidence from a *Martinez*-cause hearing could not be used to determine the merits of Navarro's underlying IAC claim because of the limits placed on habeas proceedings by the Antiterrorism and Effective Death Penalty Act ("AEDPA"). *See* 28 U.S.C. § 2254(e)(2). The Magistrate Judge therefore concluded that the most efficient way to dispose of Navarro's petition was to analyze the petition's merits on the limited record from the state court.

This Court declined the first R&R because under Ninth Circuit law, "if [a petitioner] can show cause and prejudice to excuse a procedural default, AEDPA no longer applies and a federal court may hear [the] new claim de novo." (Doc. 93 (quoting *Dickens v. Ryan*,

740 F.3d 1302, 1321 (9th Cir. 2014) (quotation marks omitted)). This Court therefore concluded that Navarro was "not absolutely precluded from developing evidence in a cause hearing that also may be used as grounds for relief if cause and prejudice are sufficiently established." (Doc. 93 at 4). This Court remanded the petition to the Magistrate Judge with instructions to determine "whether additional specified discovery" would help Navarro establish his IAC claim. (Doc. 93 at 5).

However, this Court also noted that "[i]t is possible that even applying the appropriate standard, the Magistrate Judge might still find that some or all of the claims in the petition are not colorable." (*Id.*). Further, this Court instructed that

> should Magistrate Judge Metcalf determine that some or all of the claims are colorable, he will need to determine, pursuant to *Martinez*, whether Petitioner Navarro can establish cause and prejudice to excuse his default. In doing so, Magistrate Judge Metcalf will need to consider whether it is appropriate to allow the supplementation of the factual record.

(*Id.*).

On remand, the Magistrate Judge granted a consolidated evidentiary hearing for all four grounds of Navarro's IAC claim. (Doc. 94). Respondents moved for reconsideration of that decision, however, and the Magistrate Judge granted the motion. (Doc. 101). With regards to Ground 1, the Magistrate Judge concluded that Navarro could supplement the existing record through an evidentiary hearing. (Doc. 101 at 16, 22). However, to ensure an appropriate scope for that hearing, the Magistrate Judge ordered Petitioner to request affidavits from Petitioner's trial counsel and investigator outlining the investigation they had undertaken before trial regarding the jewelry issue and offering any explanation for why the investigation may not have occurred and why any evidence obtained was not presented at trial. (*Id.* at 21–22). Regarding Grounds 2–4, the Magistrate Judge concluded that an evidentiary hearing was not warranted on Grounds 2–4. (*Id.* at 21, 27, 29).

Navarro objected to that conclusion regarding Grounds 3 and 4. (Doc. 106). This Court overruled Navarro's objections because Navarro did nothing to "indicate how and on what topics an evidentiary hearing would be practically useful in developing evidence

that would demonstrate that his prior lawyer failed to investigate the victim's past misconduct and that such failure amounted to ineffective assistance." (Doc. 113 at 5). "Navarro [also] fail[ed] to identify a single factual issue that he seeks to develop at the evidentiary hearing" with respect to Navarro's IAC claim arising out of his trial counsel's decision to respect his express wishes by foregoing the lesser included offense strategy. (*Id.*) Thus this Court affirmed the Magistrate Judge's determination that no additional factual development was necessary on grounds 3 and 4. After parties submitted declarations from trial counsel and further briefing regarding Ground 1, the Magistrate Judge determined that no further evidentiary development was warranted on that claim as well. No parties objected to that ruling, and the time for filing an objection has expired.

The Magistrate Judge has now submitted a second R&R. (Doc. 120). It concludes that in Grounds 2, 3, and 4 Petitioner failed to demonstrate IAC because the claim was "insubstantial, *i.e.*, it does not have any merit, or . . . is wholly without factual support, or . . . the attorney in the initial-review collateral proceeding did not perform below constitutional standards." *Martinez v. Ryan,* 566 U.S. 1, 15–16 (2012). It further concluded that Navarro's IAC claim based on Ground 1 is substantial and that the procedural default of the claim is excused under *Martinez*, but that ultimately Navarro can show no prejudice and therefore that claim also fails.

**DISCUSSION**

**I. Legal Standards**

This court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate." 28 U.S.C. § 636(b)(1). "[T]he district judge must review the magistrate judge's findings and recommendations de novo *if objection is made*, but not otherwise. *United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003) (*en banc*) (emphasis in original). District courts are not required to conduct "any review at all . . . of any issue that is not the subject of an objection." *Thomas v. Arn*, 474 U.S. 140, 149 (1985).

///

### A. Ineffective Assistance of Counsel

Navarro bears the burden of showing that his trial counsel was ineffective. *See Strickland v. Washington*, 466 U.S. 668, 686–87 (1984). "Strickland's standard . . . is highly demanding." *Kimmelman v. Morrison*, 477 U.S. 365, 382 (1986). To succeed, Navarro must show (1) that his counsel's representation fell below an objective standard of reasonableness and (2) that the failure prejudiced him. *Strickland*, 466 U.S. at 687. Navarro can establish prejudice by showing that there is a "reasonable probability" that the outcome of the proceedings would have been different but for counsel's deficient performance. *Id.*

Court's review of the professional judgment of trial counsel is limited by the presumption that the decisions of counsel fall within a wide range of reasonable assistance. *Id.* at 689–90. Courts should avoid "the distorting effects of hindsight" as much as possible and "evaluate the conduct from counsel's perspective at the time." *Id.* at 689. Even if counsel does not substantially investigate every single plausible line of defense, assistance can still be "effective." *Id.* at 681.

### B. *Martinez v. Ryan*

*Martinez v. Ryan* established a two-step analysis to determine whether the procedural default of a claim of IAC of trial counsel can be excused because of the ineffectiveness of counsel in post-conviction relief proceedings. *Cook v. Ryan*, 688 F.3d 598, 607 (9th Cir. 2012). First, to establish "cause," a petitioner must establish that "his counsel in the state post-conviction proceeding was ineffective under the standards of *Strickland*." *Clabourne v. Ryan*, 745 F.3d 362, 377 (9th Cir. 2014) *overruled on other grounds by McKinney v. Ryan*, 813 F.3d 798 (9th Cir. 2015). This requires that a petitioner show that post-conviction counsel's performance was deficient and that but for the deficient performance there is a reasonable probability that the post-conviction proceedings would have turned out differently. *Clabourne*, 745 F.3d at 377. A petitioner must also show "prejudice" by showing that the "underlying ineffective-assistance-of-trial-counsel claim is a substantial one, which is to say that the prisoner must demonstrate that the claim

has some merit." *Id.* (quoting *Martinez*, 566 U.S. at 14). A claim is "substantial" if it meets the standard for the issuance of a certificate of appealability, *Martinez*, 566 U.S. at 14, that is, "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) (citations and internal quotation marks omitted).

Determining whether PCR counsel was ineffective under *Strickland* requires an analysis of the merits of the underlying IAC claim. *Atwood v. Ryan*, 870 F.3d 1033, 1059–60 (9th Cir. 2017) ("In evaluating whether the failure to raise a substantial claim of ineffective assistance of trial counsel in state court resulted from ineffective assistance of *state habeas* counsel under *Strickland*, we must evaluate the strength of the prisoner's underlying ineffective assistance of *trial* counsel claim.") (emphasis in original). Thus when a claim of trial-counsel ineffectiveness would fail under *Strickland*, PCR counsel "would not have been deficient for failing to raise it." *Id.* at 1060. And "any deficient performance by state habeas counsel would not have been prejudicial, because there would not be a reasonable probability that the result of the post-conviction proceedings would have been different if the meritless claim had been raised." *Id. See also Sexton v. Cozner*, 679 F.3d 1150, 1157 (9th Cir. 2012) ("PCR counsel would not be ineffective for failure to raise an ineffective assistance of counsel claim with respect to trial counsel who was not constitutionally ineffective.").

**II. Analysis**

**A. Objection One**

Navarro objects to the legal standard applied by the Magistrate Judge when deciding whether Grounds 2–4 were colorable. (Doc. 123 at 6). He also objects to various parts of the Magistrate Judge's determinations regarding the merits of the underlying IAC claims.[1]

---

[1] Many of Navarro's objections regarding Grounds 2–4 focus on the question of whether the Magistrate Judge's substantive analysis (*i.e.*, looking at the objective reasonableness of trial counsel's actions) is inappropriate when determining whether the claim is colorable. But as the following analysis shows, under *Martinez*, Navarro's claims are procedurally defaulted, and so the outcome reached by the Magistrate Judge is correct.

### 1. Ground 2 (Misidentification)

The Magistrate Judge concluded that although Navarro's allegations "rise above mere conclusory or speculative claims," (Doc. 120 at 16), ultimately Ground 2 should be dismissed because it "is conclusively refuted by the record." (*Id.* at 19).

Navarro alleges that he was misidentified as the individual involved in a confrontation with the victim. The victim testified that the individual who threatened him yelled "brown pride" during the incident. Other witnesses later attributed the "brown pride" shout as coming from Navarro's brother-in-law, David Hernandez, not Navarro. Another bouncer, who was standing near the victim during the incident, was unable to identify Navarro as the assailant. Navarro also points to various trial transcripts, witness statements, and jury questions to support his claim. (Doc. 99 at 6). He also argues that trial counsel failed to argue much of this evidence and that had trial counsel done so, the outcome of the trial would have been different. Based on all of this, Navarro alleges that trial counsel was deficient by failing to emphasize the possibility that Navarro had been misidentified. (Doc. 7 at 15).

Navarro has failed to establish cause to excuse the procedural default of Ground 2. Trial counsel was not ineffective regarding Ground 2, so neither was PCR counsel. *See Atwood*, 870 F.3d at 1060; *Sexton*, 679 F.3d at 1157. The evidence does not establish that trial counsel performed below an objective standard of reasonableness in failing to press a misidentification defense any further than he did. At trial, the victim testified that his assailant shouted "brown pride" during the altercation in the bar. (Doc. 30-1 at 230). Navarro's brother-in-law, however, testified that *he* had been the one who yelled "brown pride." (Doc. 30-2 at 159). But there was also evidence that more than one person was yelling "brown pride"—the victim testified that "*they* were mentioning brown pride." (Doc. 46-1 at 249).

The bouncer who was standing next to the victim was unable to identify Navarro as the assailant. (Doc. 30-2 at 234). But Navarro's own brother-in-law identified *Navarro* as the person in the altercation with the victim. (Doc. 30-2 at 149). And there were other

witnesses who identified Navarro. (Doc. 30-1 at 194). Navarro himself effectively admitted to the arresting officer that he was involved in at least the broader altercation at the bar that night. (Doc. 30-2 at 69–70).

At any rate, trial counsel *did* make misidentification arguments at trial. He questioned Navarro's brother-in-law regarding his testimony that Navarro was the assailant. (Doc. 30-2 at 149–51). Trial counsel argued that the show-up identification procedures were suggestive. (*Id.* at 235). He argued that the other bouncer in the bar that night had been unable to identify Navarro. (*Id.* at 234). Trial counsel cross-examined a prosecution witness about her vantage point and ability to see Navarro. (Doc. 30-1 at 204–10). He argued that a witness who identified Navarro that night as the assailant had not actually done so. (Doc. 30-2 at 234). He argued that several of the state's identification witnesses had told law enforcement the night of the incident that they had not actually seen Navarro with a knife. (*Id.* at 236). Additionally, counsel emphasized that the fight had taken place in low lighting with a strobe light flashing, in a crowd of people, and that these factors undermined witnesses' identification of Navarro. (Doc. 46-2 at 232–33).

Trial counsel could reasonably have concluded that emphasizing the misidentification defense any further, considering the evidence, would not have been a successful strategy. Counsel could likewise have reasonably concluded that it was not necessary to address the "brown pride" shouts testimony from Navarro's brother-in-law because that same brother-in-law had identified Navarro as the one involved in the altercation with the victim. Under the strong presumption given to strategic decisions of trial counsel and avoiding the distorting effects of hindsight, *see Strickland*, 466 U.S. at 689–90, trial counsel was not ineffective. It is also clear that Navarro could not have been prejudiced by trial counsel's decisions here because there is not a reasonable probability that Navarro's trial would have come out differently had trial counsel taken the actions Navarro claims he should have.

Thus PCR counsel was not deficient in failing to raise the Ground 2 claim, and Navarro could not have been prejudiced. *See Atwood*, 870 F.3d at 1060; *Sexton*, 679 F.3d

at 1157. Since PCR counsel was not ineffective, it is unnecessary to decide whether the claim is "substantial" under *Martinez*. Navarro has not established cause under *Martinez* to excuse the procedural default of this claim.

### 2. Ground 3 (Victim's Criminal History)

As with Ground 2, the Magistrate Judge concluded that Ground 3 is not a colorable claim and should therefore be dismissed. Navarro alleges that his trial counsel was ineffective for failing to investigate the victim's criminal history and use the victim's criminal history to impeach him during trial. (Doc. 7 at 16–25). Navarro points to four possible sources of evidence for impeachment:

1. a 2000 conviction of theft from an employer, a resulting plea agreement, a failure to appear, and probation;
2. a 2000 dismissed prosecution on a charge of giving false information to a police officer;
3. a 2002 probation violation for absconding and failing to pay restitution, resulting in arrest and extension of the victim's probation until 2007 and incarceration as a term of probation; and
4. a 2000 domestic violence investigation and resulting deferred misdemeanor prosecution, failure to complete an anger management program, and guilty plea to probation violation resulting in a ten-day sentence.

Navarro alleges that this information was "available and readily discoverable" to trial counsel and alleges that trial counsel's failure to do so was ineffective under *Strickland*. (Doc. 99 at 7). Navarro stresses in his objections that Ground 3 covers trial counsel's failure to investigate the victim's criminal history as well as the failure to impeach the victim with that history. (*See* Doc. 123 at 16).

But even if trial counsel was deficient by failing to investigate and present evidence of that history, Navarro has not established that he was prejudiced by the alleged failure because it is not "reasonably probable" that the evidence was admissible, much less that it would have swayed the jury's verdict. Accordingly, trial counsel was not ineffective under

*Strickland* regarding Ground 3.

The victim's 2000 conviction for theft was used at trial for impeachment. Navarro contends that trial counsel failed to sufficiently probe that theft conviction—and counsel does not appear to have delved deeply into it. But it was the subject of inquiry. Further, more evidence about the theft may have bolstered the victim's credibility. There was evidence that the victim embezzled the money primarily to pay other employees of the business for working, and that he planned to pay back the amount stolen from his own funds. (Doc. 7-2 at 5). Had trial counsel pressed the victim further on the details of the theft conviction, it may well have backfired and bolstered the victim's testimony, hurting Navarro's case.

Navarro has failed to establish that the other incidents he points to from the victim's criminal history would even have been admissible under Arizona law. The Magistrate Judge's extensive analysis on this point is largely correct and is adopted by this Court. Navarro has failed in this regard to establish a "reasonable probability" that the outcome of his case would have been different if counsel had probed the victim's theft conviction further.

Navarro's only objection to the Magistrate Judge's admissibility analysis is regarding Rule 404(b). The Magistrate Judge concluded that the criminal history Navarro points to would not have been admissible under Arizona Rule of Evidence 404(b). Navarro contends that evidence that the victim was on probation at the time of the altercation could have established that the victim was motivated to testify falsely at trial to shift the blame for the altercation off himself and onto others, so as to avoid a probation violation and potential jail time.

Rule 404(b) states that

> [e]xcept as provided in Rule 404(c) evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

Ariz. R. Evid. 404(b). This Court does not necessarily agree with the Magistrate Judge that the state of Arizona law is "unclear" as to whether "bad acts evidence" can be used to show a motive to lie. There are Arizona cases that state that it can. *See State v. Riley*, 141 Ariz. 15, 20, 684 P.2d 896, 901 (Ariz. Ct. App. 1984) (noting that "prior bad acts are admissible under Rule 404(b) to attack the credibility of a witness when the evidence tends to show a motive to lie"); *State v. Sanchez-Osuna*, 2010 WL 785844 at *3 (Ariz. Ct. App. Mar. 9, 2010) (quoting and following *Riley*).

In the end, however "inherent in [Rule 404(b)] is the assumption that the motive may be shown." *Riley*, 141 Ariz. at 20. Navarro fails to establish that the victim actually had a motive to lie, as the Magistrate Judge explained. There is no evidence that the victim violated the terms of his probation that night. There was testimony that Navarro shoved the victim, the victim shoved back, Navarro drew a knife, and the victim then withdrew with his hands up. (Doc. 30-1 at 229). Even Navarro's brother-in-law testified that it appeared that the victim "didn't want to fight." (Doc. 30-2 at 150). Even had the evidence of the victim's probation status been introduced, it is just as likely that the jury would have found that it bolstered the victim's testimony as to his passive reaction to Navarro's aggression as it is that the jury would have found that it gave the victim motive to lie.

Navarro has failed to establish that it is reasonably probable that but for trial counsel's failure to investigate and admit certain instances from the victim's criminal history the outcome of the proceedings would have been different. *See Strickland*, 466 U.S. at 687. Since trial counsel was not ineffective, PCR counsel was not ineffective for failing to raise the Ground 3 claim in PCR proceedings. *See Atwood*, 870 F.3d at 1060; *Sexton*, 679 F.3d at 1157. Navarro has thus failed to show cause to excuse the procedural default of the ground under *Martinez*.

### 3. Ground 4 (Lesser Included Instruction)

The Magistrate Judge concluded that Ground 4 is not a colorable claim. Navarro objects to the substance of the R&R's analysis regarding Ground 4. He alleges that trial counsel was ineffective by requesting that the trial court not give the lesser included

disorderly conduct instruction to the jury (even though Navarro himself insisted that the instruction not be given). He contends that Ground 4 is supported by various evidence: filings by trial counsel indicating that he was pursuing a "lesser included" defense strategy; trial transcripts of trial counsel withdrawing the lesser included instruction despite his view that one was needed; transcripts from sentencing proceedings suggesting that trial counsel admitted that it was "improper" for him to have requested that the instruction not be included; transcript of an (off-the-record) interview where trial counsel stated that withdrawing jury instructions was his responsibility (rather than Navarro's), and that withdrawing them had been "really crucial" and it may have been a "mistake" to do so; various cases from Arizona and the American Bar Association ("ABA") that suggest that trial counsel should not have acquiesced to Navarro's demand that the instruction be withdrawn; and questions from the jury during deliberations that allegedly indicate skepticism about whether Navarro had used a knife in the altercation. (Doc. 99 at 7–8).

Navarro has failed to establish cause to excuse the procedural default of Ground 4. His trial counsel was objectively reasonable in following Navarro's demands that the trial court not instruct the jury as to the lesser included offense of disorderly conduct. The key issue is whether trial counsel had an obligation to ignore Navarro's request in this context. The Arizona case law Navarro cites to support his contention that trial counsel was required to overrule his demands is unpersuasive. *See State v. Lee*, 142 Ariz. 210, 689 P.2d 153 (1984). *Lee* dealt with an attorney's decision to call witnesses demanded by his client even when the attorney believed the witnesses would offer perjured testimony. *Id.* at 212. The Arizona Supreme Court held that "[i]n succumbing to his client's demand that he call [two witnesses who gave perjured testimony], counsel did not fulfill his duty to make tactical, strategic decisions and therefore fell below minimal standards." *Id.* at 216.

But the Arizona Supreme Court, in a case outside of factual the context of *Lee*, has refused to extend *Lee*'s reasoning. *See State v. Rosco*, 184 Ariz. 484, 499, 910 P.2 635, 650 (1996) ("*Lee* . . . merely direct[s] that the right to effective assistance does not include the right to require [one's] lawyer to perpetrate a fraud on the court by calling witnesses

- 12 -

likely to commit perjury.") (internal quotation marks omitted).

And in a disciplinary proceeding, the Arizona Supreme Court indicated that the question of whether to request a lesser-included-offense instruction is for the client to make. *See In the Matter of Wolfgram*, 174 Ariz. 49, 56, 847 P.2d 94, 101 (1993) (explaining that in failing to consult with his client concerning lesser-included instructions a lawyer deprives the client "of her right to participate in this very important decision[,]" and that the lawyer is to "explain the problem, lay out the significant choices, and help *the client* make an informed, rational decision.") (emphasis added).

Arizona law is therefore inconclusive on the question presented by this case. Various federal circuit courts of appeals have failed to provide an answer.[2] The Ninth Circuit does not appear to have addressed the question squarely. The Restatement suggests that trial counsel was required to implement Navarro's wish.[3] The ABA seems to have changed its mind on the topic.[4] And this Court does not believe that Navarro can instruct his lawyer to take a reasonable action—attempting an "all or nothing" defense—and then later use his attorney's obedience as grounds for an IAC claim.

It was not unreasonable for trial counsel to honor Navarro's demands. There is no direct authority on which trial counsel could have relied in making the decision. It is true that the trial court suggested to trial counsel that it believed that the ultimate decision was

---

[2] *See, e.g.*, *Wood v. Quarterman*, 491 F.3d 196, 203 (5th Cir. 2007) ("Neither the Supreme Court nor this court has ever held that a lawyer provides ineffective assistance by complying with the client's clear and unambiguous instructions to not present evidence. In fact, this court has held on several occasions that a defendant cannot instruct his counsel not to present evidence at trial and then later claim that his lawyer performed deficiently by following those instructions."); *United States v. McGill*, 11 F.3d 223, 227 (1st Cir. 1993) ("in some instances, listening to the client rather than to the dictates of professional judgment may itself constitute incompetence.").

[3] Restatement (Third) of Law Governing Lawyers § 21(2) cmt d (2000) ("A client may give instructions during the representation about matters within the lawyer's reasonable power to perform, *just as any other principal may instruct an agent*.") (emphasis added).

[4] *See* ABA Crim. Just. Sect. Stand., Standard 4-5.2 Control and Direction of the Case, Commentary (1993 ed.) (suggesting that counsel is required to consult with client on question of lesser included offense instructions); Standards for Criminal Justice, Vol. 1, Standard 4-5.2, Commentary at 68 (2d ed. 1986 Supp.) (observing that the ultimate decision about lesser included offense instructions rests with the client).

his, but even that, in the face of the substantial uncertainty among various legal authorities, is not enough to demonstrate that trial counsel was objectively unreasonable. The evidence shows that trial counsel and the court explained the potential consequences to the decision to Navarro, yet he insisted in withdrawing the instructions anyway.

The decision to follow Navarro's request was reasonable even in the context of this specific case, where it appeared that trial counsel attempted to pursue a "lesser included" defense from the beginning. The apparent thrust of this strategy was to persuade the jury that Navarro did not brandish a knife at the victim. Had that strategy succeeded and the lesser-included instruction been given, the jury could have convicted Navarro of disorderly conduct. Had the strategy succeeded and the lesser-included instruction not been given, the jury would have *acquitted*. Thus is was not objectively unreasonable for trial counsel to follow Navarro's direction and request that the instruction not be given, even if counsel had initially planned the defense around a lesser-included instruction.

Trial counsel's reflections after the fact are not controlling. It is true that trial counsel stated—long after the trial ended—that "if [he] made a mistake, it was listening to [Navarro's request that the instruction be withdrawn]." (Doc. 1-7 at 13). But *Strickland* asks whether counsel's actions were objectively reasonable at the time they were made and instructs courts to avoid "the distorting effects of hindsight." *Strickland*, 466 U.S. at 689. "After an adverse verdict at trial even the most experienced counsel may find it difficult to resist asking whether a different strategy might have been better, and, in the course of that reflection, to magnify their own responsibility for an unfavorable outcome." *Harrington v. Richter*, 562 U.S. 86, 109–10 (2011). But "*Strickland* . . . calls for an inquiry into the objective reasonableness of counsel's performance." *Id.*

Since trial counsel's actions were not objectively unreasonable, he was not deficient under *Strickland*. This Court need not address the prejudice prong of the *Strickland* test, and Navarro's objections to the Magistrate Judge's prejudice analysis are moot. PCR counsel was not ineffective in not raising a Ground 4 argument. *See Atwood*, 870 F.3d at 1060; *Sexton*, 679 F.3d at 1157. Navarro has failed to establish cause to excuse his

procedural default.

### 4. Conclusions Regarding Grounds 2–4

Navarro's IAC claims based on Grounds 2, 3, and 4 fail under *Strickland*. PCR counsel was therefore not ineffective in failing to raise those claims in the state PCR proceeding. This being the case, no cause has been established under *Martinez*. Grounds 2, 3, and 4 are procedurally defaulted.

### 5. Cumulative Prejudice

Navarro objects to the Magistrate Judge's conclusion that there is no cumulative prejudice attributable to trial counsel's actions. The Magistrate Judge's conclusion is correct. Regarding Grounds 2 and 4, trial counsel was not deficient. Thus there was no prejudice. Regarding Grounds 1, and 3, however, this Court assumed for purposes of this decision that counsel may have been deficient. Ground 1 and Ground 3 did not prejudice Navarro individually to the level of establishing ineffectiveness under *Strickland*, but courts have recognized that that prejudice may be found "from the totality of the counsel's errors and omissions." *United States v. Tucker*, 716 F.2d 576, 595 (9th Cir. 1983).

But "cumulative error warrants habeas relief only where the errors have so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Parle v. Runnels*, 505 F.3d 922, 927 (9th Cir. 2007) (internal quotation marks omitted). Put another way, habeas relief on a cumulative prejudice theory is only appropriate "where the combined effect of individually harmless errors renders a criminal defense *far less* persuasive than it might otherwise have been." *Id.* (emphasis added) (internal quotation marks and alterations omitted).

Regarding Ground 3, Navarro was not prejudiced by trial counsel's failure to investigate or attempt to admit evidence of the victim's criminal history. The proffered evidence would mostly not have been admissible, and the only admissible evidence was actually admitted. Not only does the Ground 3 allegation fail to meet *Strickland*'s "reasonable probability" standard, but it fails to get even close. And similarly, Ground 1 fails to meet *Strickland*'s standard for prejudice. Even when viewed together, Grounds 1

and 3 fail to establish a reasonable probability that the trial outcome would have been different had trial counsel taken the actions Navarro alleges he should have. This point is further illustrated by looking at cases in which courts have found cumulative prejudice. *See*, *e.g.*, *Harris v. Wood*, 64 F.3d 1432, 1438 (9th Cir. 1995) (detailing eleven deficiencies by counsel that, taken cumulatively, prejudiced defendant).

### B. Objection Two

Navarro objects to the Magistrate Judge's conclusion that Navarro was not prejudiced by trial counsel's "failure to investigate and present evidence related to [Navarro's] jewelry" (Ground 1). (Doc. 123 at 4). Navarro argues that the knife that he allegedly used during the confrontation was not actually a knife but rather jewelry he was wearing that was mistaken for a knife by witnesses who testified at trial. (Doc. 7 at 10, 14–15). Navarro contends that trial counsel was ineffective by failing to investigate this defense and therefore was unable to present evidence to support the "jewelry argument." (*Id.*).

The Magistrate Judge concluded that this argument was procedurally defaulted. However, he also concluded that it is a colorable claim, and that Navarro has demonstrated cause under *Martinez* for excusing the procedural fault. (Doc. 120 at 15, 66). However, this Court concludes that Navarro has not established cause under *Martinez* under the test articulated by the Ninth Circuit. *See* Discussion, Part I(C), *supra*. Even if trial counsel failed to investigate and his performance thereby fell below an objective standard of reasonableness, Navarro has failed to establish that he was prejudiced by trial counsel's failure to investigate and present more evidence of the jewelry Navarro allegedly wore the night of the altercation at the bar. This means trial counsel was not ineffective under *Strickland*, PCR counsel was not ineffective under *Strickland*, and Navarro has failed to establish cause under *Martinez*. *See Atwood*, 870 F.3d at 1060; *Sexton*, 679 F.3d at 1157.

Navarro lists the following evidence as supporting his contention that trial counsel was ineffective: testimony suggesting that the jewelry was mistaken for a knife; declarations from witnesses that Navarro had worn jewelry the night of the incident;

interview transcripts from trial counsel stating that he "missed" the possibility that Navarro's jewelry was mistaken for a knife; pretrial pleadings indicating that trial counsel had not conducted investigation on the question; billing statements from trial counsel's investigator showing that he had not performed investigation into the case; police reports and witness statements from the night of the incident indication confusion over the existence of a knife; and various questions from the jury during trial. (Doc. 99 at 5–6).

Despite that evidence, however, Navarro has not established a reasonable probability that his trial would have ended differently had trial counsel introduced evidence that Navarro allegedly wore a medallion on his neck, a bracelet, and a wristwatch.

Trial counsel did introduce evidence that Navarro wore a ring on the night in question and argued that the ring could have been confused in the dark bar for a knife. Trial counsel elicited testimony that Navarro wore a "shiny ring on his right hand." (Doc. 46-2 at 204). On cross-examination of a state witness trial counsel asked whether the witness was able to "see what it was clearly enough to know if it was a knife or a belt buckle or a ring or what it was that flashed?" (Doc. 46-1 at 212). He also argued during his closing that in "a dimly lit bar with strobe lights flashing and a fight going on, any number of things could cause the flash [seen by a witness], including jewelry on . . . Robert's hand, belt buckle, a bottle, just about anything, a strobe light." (Doc. 46-2 at 233). Yet the jury convicted Navarro even though that jewelry argument was made. Trial counsel argued that the ring worn *on the hand* in which Navarro held the knife could have been mistaken for the knife. It is unlikely that a jury who did not buy that argument would have believed that other jewelry, located further away from the knife on Navarro's body, was mistaken for the knife.

Further, there was a significant amount of other evidence which suggested that Navarro did in fact wield a knife during the confrontation. Since the jury's verdict was strongly supported by this other evidence, Navarro's argument that a failure to introduce evidence of a wristwatch, a bracelet, and a medallion prejudiced him fails. *See Strickland*, 466 U.S. at 695–96 ("a verdict or conclusion only weakly supported by the record is more

likely to have been affected by errors than one with overwhelming record support."). There was testimony that Navarro "took something out" and held it like a weapon; (Doc. 46-1 at 38, 97); testimony that it was "a sharp object;" (*id.* at 119); testimony that the object felt sharp when it was pressed against the victim's stomach; (*id.*); testimony that the victim immediately put both his hands up when Navarro did so; (*id.* at 97, 102, 119); and testimony that Navarro asked the victim if he wanted to die; (*id.* at 120). Further, evidence was introduced that the police had recovered a knife from Navarro's vehicle that night. Faced with this evidence, the jury chose to convict.

Navarro objects to the Magistrate Judge's examination of other evidence supporting the conclusion that Navarro had a knife in the bar that night. He contends that considering other evidence is inappropriate under *Strickland*. But *Strickland* itself disagrees: "In making this [prejudice] determination, a court hearing an ineffectiveness claim must consider the totality of the evidence before the judge or jury." *Strickland*, 466 U.S. at 695.

Trial counsel may have been deficient by failing to investigate and introduce evidence of other jewelry Navarro may have worn (the Court does not decide this). But even if that is true, because trial counsel did introduce and argue evidence of Navarro's ring, and because substantial other evidence supported the conclusion that Navarro used a knife during the altercation, Navarro has not established a reasonable probability that the outcome of the trial would have been different had the evidence of the bracelet, watch, and necklace been introduced. Trial counsel was therefore not ineffective under *Strickland*, and neither was PCR counsel. No cause has been established to excuse Navarro's procedural default of Ground 1.

C. **Objection Three**

Finally, Navarro objects to the Magistrate Judge's determination that a certificate of appealability ("COA") should only be granted regarding Ground 1. Since this Court has denied Navarro's claims on procedural grounds, "a COA should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it

debatable whether the district court was correct in its procedural ruling."

Jurists of reason would not find Navarro's Ground 2 (misidentification) and Ground 3 (criminal history) IAC claims debatable. This Court also concludes that jurists or reason would not find Ground 1 debatable, for the reasons outlined above. But reasonable jurists could disagree on this Court's conclusions that trial counsel was not deficient in acquiescing to Navarro's demands that the trial court not instruct the jury as to the lesser included offense. A COA will therefore be issued for Ground 4 (lesser-included instruction).

## CONCLUSION

Navarro's IAC claims based on Grounds 1, 2, 3, and 4 are procedurally defaulted. He has not established cause under *Martinez v. Ryan* to excuse the procedural default because trial counsel was not ineffective under *Strickland*.

**IT IS THEREFORE ORDERED** that Magistrate Metcalf's R&R (Doc. 120) is adopted (with modifications as outlined above).

**IT IS FURTHER ORDERED** that Petitioner's Amended Petition for Writ of Habeas Corpus (Doc. 7) is **DISMISSED WITH PREJUDICE**. The Clerk of Court is directed to terminate this action and enter judgment accordingly.

**IT IS FURTHER ORDERED** that a Certificate of Appealability for Ground 4 is **GRANTED**.

Dated this 19th day of December, 2018.

_G. Murray Snow_
G. Murray Snow
Chief United States District Judge